IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SMITH & LOVELESS, INC.,                    )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )          Case No. 04-2384-JPO
                                           )
CAICOS CORPORATION and                     )
INSURANCE COMPANY OF THE WEST,             )
                                           )
                    Defendants.            )

## MEMORANDUM AND ORDER

This case comes before the court on the motion of the defendants, Caicos Corporation ("Caicos") and Insurance Company of the West ("ICW"), for dismissal on account of lack of personal jurisdiction or, in the alternative, for transfer to the United States District Court for the Western District of Washington (**doc. 11**). The plaintiff, Smith & Loveless, Inc., opposes this motion (doc. 16), and defendants have filed a reply (doc. 23). For the reasons set forth below, defendants' motion is granted in part and denied in part.

### I.   Introduction and Background

This is a breach of contract case. It arises out of a public works construction project in Kenmore, Washington (the "project"). Caicos, a Washington corporation, served as the project's general contractor. As required by Caicos' contract with the owner of the project, and consistent with Washington law, Caicos entered into a separate contract with ICW, a California business entity, pursuant to which ICW serves as Caicos' surety for the project, i.e.,

O:\M & O\04-2384-JPO-11.wpd

providing all necessary payment bonds.   Plaintiff, a Kansas company that manufactures waste water treatment equipment and pumps, supplied two such pumps to Caicos for the project.

Plaintiff claims that Caicos breached its contract by failing to pay $53,022.00, a portion of the negotiated price for the pumps.   Plaintiff also asserts a claim for unjust enrichment against Caicos, as well as a claim against ICW on its payment bond.

Plaintiff, in opposing the motion to dismiss, contends that this court may properly exercise personal jurisdiction over both Caicos and ICW pursuant to the Kansas long-arm statute, Kan. Stat. Ann. § 60-308(b).   Plaintiff also contends that the contract at issue in this case is subject to a forum selection clause which dictates that all disputes will be resolved in Kansas.   And finally, plaintiff argues that venue would not be any more convenient in the Western District of Washington, and thus the case should not be transferred there.

The parties appear to agree that there was a contract between plaintiff and Caicos.   But they disagree about the terms of that contract and even as to which documents should be considered part of that contract.

In any event, it is the court's understanding that Caicos accepted bids from suppliers for providing the water pumps that were needed for the project.   ADS Equipment, Inc. ("ADS"), a local Washington distributor, submitted a bid on behalf of plaintiff for the project on May 1, 2002.   At some point, Caicos informed plaintiff that it had been awarded the contract.   No written communication has been provided to the court regarding either the bid submitted by plaintiff or the acceptance of that bid by Caicos.   However, the record does reflect that, on June 18, 2002, plaintiff sent a letter to Caicos thanking Caicos for awarding the contract.

Therefore, the court assumes that these previous communications took place – whether by oral or written means – as Caicos alleges.

The record suggests that Caicos was informed by both ADS and plaintiff that plaintiff would not begin work until Caicos submitted a purchase order for the pumps.[1]  That purchase order was finalized on June 25, 2002.[2]  On July 15, 2002, plaintiff sent Caicos a confirmation of the purchase order.[3]  This confirmation stated that plaintiff recognized the purchase order submitted by Caicos "as the contract between [plaintiff and Caicos]."   However, this confirmation also proposed, for the first time, additional terms for the contract.   These new terms included credit and payment terms, shipping terms, indemnification information, and plaintiff's general corporate terms and conditions, all of which were attached and incorporated into the letter.[4]  Included within those corporate terms was a forum selection clause, which stated that "[Caicos] by executing this agreement agrees to submit to the Jurisdiction of the State of Kansas and the venue for any disputes between the parties will be in the District Court of Johnson County, Kansas, or the Federal District Court of Kansas."[5]

Plaintiff does not dispute that each of the above-described terms appeared for the first time in its July 15, 2002 confirmation letter.   And plaintiff does not dispute that neither Caicos

---

[1] Doc. 33, Exh. 1, Berry Aff., ¶ 9.

[2] *Id.* at ¶ 10.

[3] *See* doc. 16, Exh. 5.

[4] *Id.* at 1.

[5] *Id.* at 2.

nor ICW ever signed the July 15, 2002 letter or the attached terms and conditions.   Instead,

plaintiff essentially argues that these terms, including the forum selection clause, should

retroactively apply to the previously-executed contract[6] because Caicos continued the

transaction without objecting to the additional terms.   That is, plaintiff argues that Caicos

assented to the terms by way of its silence.   Therefore, plaintiff argues, personal jurisdiction

and venue are proper in this court because its forum selection clause is valid and enforceable

against Caicos.

As to ICW, plaintiff appears to argue that ICW was a party to the contract at issue by

way of its role as surety for the Washington project.   Plaintiff also argues that ICW is subject

to jurisdiction in Kansas because it has registered with the Kansas Department of Insurance,

i.e., plaintiff argues that, by obtaining the right to conduct business in the state of Kansas, ICW

has agreed to be subject to jurisdiction in the state as well.

II.   Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

In a case such as this, where the court's subject matter jurisdiction is based on the

parties' diversity of citizenship and the amount in controversy, the plaintiff bears the burden

---

[6] As set forth above, plaintiff has stated that it construes Caicos' purchase order as the contract at issue.   Regardless of which party the court ultimately agrees with on the issue of which documents constitute the contract, the terms at issue clearly were added after the contract was executed.   Even if plaintiff were now to argue that the July 15, 2002 confirmation letter should be construed as its acceptance of Caicos' offer (i.e., construing Caicos' purchase order as the offer), the addition of material terms within that letter would render it a counter-offer under black-letter contract law.   *See Unified Sch. Dist. v. Phifer*, 729 F. Supp. 1298, 1305 (D. Kan. 1990).

of establishing that the court has personal jurisdiction over the defendants.[7]   However, when a motion to dismiss is filed before trial based on affidavits and other written materials, the plaintiff is only required to make a prima facie showing in order to avoid dismissal.[8]   To the extent the facts alleged by the parties (and supported by their affidavits) differ, the court resolves all factual disputes in favor of the plaintiff.[9]   If the plaintiff makes the required prima facie showing that personal jurisdiction exists, "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[10]

In order to defeat the motion now before the court, therefore, plaintiff need only make a prima facie showing that jurisdiction is proper in this court under the guidelines for general jurisdiction, specific jurisdiction, or a valid forum selection clause.   As set forth above, plaintiff and Caicos disagree about whether the forum selection clause at issue was ever made part of the contract between them.   But the court need not fully analyze and decide this issue.[11]

---

[7] See Behagen v. Amateur Basketball Assoc., 744 F.2d 731, 733 (10th Cir. 1984).

[8] Thompson v. Chambers, 804 F. Supp. 188, 191 (D. Kan. 1992).

[9] See Mktg. Group, Inc. v. Successful Dev. Int'l, Inc., 41 F. Supp. 2d 1241,1242 (D. Kan. 1999).

[10] OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

[11] Although the court will not address this issue at length, it notes that section 2-207 of the Uniform Commercial Code appears to indicate that, absent a prior course of dealing between the parties, the terms at issue cannot be enforced because they were added after the contract was executed.   See M.K.C. Equip. Co. v. M.A.I.L. Code, Inc., 843 F. Supp. 679, 686

(continued...)

This is because the court's ruling regarding jurisdiction over Caicos is clearly mandated by the Kansas long-arm statute irrespective of the forum selection clause.

> A.       Specific Jurisdiction Over Caicos Pursuant to the Kansas Long-Arm Statute

In diversity actions such as the instant case, the parties agree that personal jurisdiction over a nonresident defendant is determined by the law of the forum state.[12]   To exercise personal jurisdiction over a nonresident defendant, the court must ensure that "the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state" and that the due process requirements of the Constitution are satisfied.[13]   The Kansas long-arm statute has been interpreted by Kansas courts "to allow jurisdiction to the full extent permitted by due process."[14]

A nonresident submits to the jurisdiction of the State of Kansas as to any cause of action arising from the performance of any of the acts enumerated in the Kansas long-arm

---

[11](...continued)
(D. Kan. 1994). Moreover, the corporate terms themselves indicate that the forum selection clause is binding "upon execution," which is significant because the parties agree that Caicos never executed the corporate terms or any document incorporating them. In addition, Kansas law appears to make it clear that plaintiff's theory of "assent by silence" would not withstand scrutiny. *Id.* at 685.

[12] *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994).

[13] *Id.* at 1304-05.

[14] *Id.* at 1305.

statute.[15]   The Tenth Circuit has approved a three-part test to determine whether a nonresident defendant's contacts with the forum state are sufficient to meet due process standards.[16]   First, the defendant must have purposefully availed himself of the benefits of conducting activities in the forum state.[17]   However, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."[18] Jurisdiction is proper when "the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."[19]

Second, the claim must arise from the defendant's forum-related activities.   There must be sufficient contacts with the forum state that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.[20]

And third, the quality and nature of the defendant's contacts must be such that it is reasonable to require him to appear in the forum state.[21]   The court here must consider the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining

---

[15] Kan. Stat. Ann. § 60-308(b).

[16] *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir. 1988); *Marcus Food Co. v. Family Foods of Tallahassee, Inc.*, 729 F. Supp. 753, 757-58 (D. Kan. 1990).

[17] *See Hanson v. Denckla*, 357 U.S. 235 (1958).

[18] *Id.* at 253.

[19] *Burger King Corp.*, 471 U.S. at 475 (emphasis in original).

[20] *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

[21] *Id.* at 476; *International Shoe*, 326 U.S. at 317.

relief.[22]

Plaintiff contends that jurisdiction over Caicos is proper pursuant to various portions of the Kansas long-arm statute. That statute provides, in relevant part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> . . . . .
>
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.[23]

Caicos states that the contract at issue was not wholly performed in Kansas. But that contention is of no consequence. It is uncontroverted that plaintiff and Caicos are parties to the contract at issue.[24] And it is also uncontroverted that plaintiff is a Kansas resident and that

---

[22] *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

[23] Kan. Stat. Ann. § 60-308(b). Plaintiff also argues that long-arm jurisdiction over Caicos is proper under Kan. Stat. Ann. § 60-308(b)(1), which of course deals with an out-of-state defendant who "transacts business" in Kansas. The court is wholly unpersuaded by this argument given the record presented. However, because the court believes that personal jurisdiction is proper under subsection (b)(5) of the long-arm statute, in the interests of judicial economy the court will refrain from any extended discussion of subsection (b)(1).

[24] Caicos does not appear to argue that it unknowingly entered into a contract with a Kansas corporation; that is, Caicos does not argue that ADS, rather than plaintiff, held itself out as the party supplying the pumps pursuant to the contract. However, to the extent Caicos may have intended to argue that ADS, rather than plaintiff, was the party with which it contracted, that argument also fails, as Caicos has presented no evidence that this was the case.

at least part of the contract was performed in Kansas.  That is, it is clear that plaintiff fabricated and shipped the two pumps at issue in the state of Kansas.  As set forth above, the long-arm statute only requires that the contract be performed "in whole or in part by either party in this state."

As to three relevant constitutional factors, the court first finds that Caicos purposefully availed itself of the benefits of conducting activities in Kansas, i.e., Caicos invited plaintiff's bid, not the other way around.  Thus, this case presents the antithesis of unilateral activity by one claiming a relationship with a nonresident defendant.  Jurisdiction is proper here because the contacts proximately resulted from actions by Caicos itself that created a substantial connection with Kansas.

Second, it is uncontroverted that plaintiff's claim arises from the Caicos' above-described Kansas-related activities.  In this sense, although Caicos has not "transacted business" within the meaning of the separate provision of the Kansas long-arm statute (Kan. Stat. Ann. § 60-308(b)(1)), there were sufficient contacts with Kansas within the ambit of Kan. Stat. Ann. § 60-308(b)(5), such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

And third, the court finds that the quality and nature of Caicos' contacts, however limited, were still such that it is reasonable to require Caicos to appear and defend in Kansas. The court has considered the burden on Caicos, the interests of Kansas, and the plaintiff's interest in obtaining relief; on balance, these interests clearly weigh in favor of this court retaining jurisdiction over Caicos.

Plaintiff has demonstrated a clear basis for the court to exercise personal jurisdiction over Caicos pursuant to Kansas' long-arm statute.   Further, plaintiff has demonstrated that such an exercise of long-arm jurisdiction would not offend Caicos' constitutional rights to due process.   Therefore, as to Caicos, the motion to dismiss will be denied.

B.      Jurisdiction Over ICW in Kansas

Next, defendant ICW asks the court to dismiss it from this case for lack of personal jurisdiction.   Unlike Caicos' jurisdictional arguments, the court believes that ICW's points are well-taken, as explained below.

Plaintiff argues that ICW is a party to the contract at issue and, therefore, is also subject to personal jurisdiction under the Kansas long-arm statute.   Plaintiff also appears to argue that this court may properly exercise jurisdiction over ICW simply because ICW has registered with the Kansas Insurance Department; plaintiff argues that ICW has availed itself of the privilege of doing business in Kansas and, therefore, has consented to the exercise of jurisdiction in this state.

1.      Specific Jurisdiction

As a preliminary matter, the court concludes that ICW is not subject to specific jurisdiction under the Kansas long-arm statute.   ICW did not enter into a contract with a Kansas resident.   Nor did ICW enter into a contract that was wholly or partially performed in Kansas. Instead, ICW entered into a contract with Caicos, a Washington corporation, by which it agreed to act as surety on Caicos' performance bond for a public works construction project in Washington.   Arguably, plaintiff is a third-party beneficiary of the contract between Caicos and

ICW and could enforce that contract.[25]   But, this does not make ICW a party to the contract between Caicos and plaintiff.   Plaintiff's claim that ICW is a party to this contract and, therefore, subject to specific jurisdiction under the Kansas long-arm statute, clearly fails.

Also, to the extent that plaintiff intended to argue that ICW is subject to jurisdiction under the "transaction of business" prong of the long-arm statute,[26] that argument similarly fails.  Plaintiff has presented no evidence that ICW transacts any business n Kansas.

2.      General Jurisdiction

Next, plaintiff appears to argue that, simply by virtue of registering with the Kansas Insurance Department, ICW has subjected itself to jurisdiction in Kansas for purposes of the instant case.   It is true that, under the theory of specific jurisdiction, and consistent with due process considerations, a defendant who purposefully avails itself of the benefit of doing

---

[25]  Richard A. Lord, Williston on Contracts § 37:30 (4th ed. 2004); Restatement (Second) of Contracts § 302(1)(a) (1981).  The court notes that plaintiff cites *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 805 P.2d 1244 (1991), for the position that ICW is subject to jurisdiction simply as guarantor of a contract to be performed in Kansas.  In fact, in *Noel*, the guarantor had entered into a contract with a Kansas resident.  The issue before the court was whether the guarantor was subject to long-arm jurisdiction if a third-party beneficiary sued to enforce the contract at issue.  *Id.* at 239.  The case at bar is significantly different.  ICW merely acted as surety for the primary construction contract in this case.  In doing so, it essentially agreed to indemnify the owner of the construction project against any contractors in the event Caicos failed to pay.  There is no evidence that ICW signed the individual contract at issue in this case as a guarantor.  Further, in *Noel*, the court stated that jurisdiction was proper as to the guarantor only if minimum contacts existed such that notions of fair play and substantial justice were not offended.  *Id.* at 239.  Clearly, as set forth in this memorandum and order, ICW does not have the requisite minimum contacts with Kansas to subject it to jurisdiction here.

[26] Kan. Stat. Ann. § 60-308(b)(1).

business in Kansas can be haled into court for any action arising from those contacts. However, to the extent that the claims at issue do not arise from the defendant's contacts with the state, plaintiff must prove that general personal jurisdiction is proper.   A different analysis applies in the general jurisdiction context because, "[f]or general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction."[27]   In the instant case, it is clear that plaintiff's claim against ICW does not relate to ICW's contacts with the state of Kansas, but to its position as surety for a performance bond in Washington. Therefore, the court must examine ICW's contacts in the context of general jurisdiction.

Due process would not be offended by the district court's assertion of jurisdiction if ICW had contacts with Kansas sufficient to "constitute the kind of continuous and systematic general business contacts" required for general jurisdiction.[28]   In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[29]

As   noted above, plaintiff very simply argues that ICW has established sufficient contacts with Kansas by registering with the Kansas Insurance Department, in that it consented

---

[27] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir.1992).

[28] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[29] *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

O:\M & O\04-2384-JPO-11.wpd                  -12-

to jurisdiction in exchange for the privilege of doing business in the state. But regardless of how simplistically plaintiff looks at this issue, the court will proceed to consider the sufficiency of ICW's contacts in light of the four factors outlined in the preceding paragraph.

There is no evidence that ICW solicits business in Kansas. Nor is there any evidence that ICW sends agents into Kansas on a regular basis or that it does any significant volume of business in the state. In fact, ICW has no physical presence in Kansas and does not engage in any business in Kansas.[30]  Certainly there is nothing in the record suggesting that ICW held itself out to the public as transacting business in Kansas. Although ICW admits that it is registered with the Kansas Insurance Department, that appears to be its *only* contact with the state. As a matter of law, the court finds that this single contact does not create a basis for the exercise of general personal jurisdiction, i.e., simply registering with the Insurance Commissioner, without actually taking steps to engage in and solicit business from the state, cannot amount to the "continuous and systematic" business contacts required to support general jurisdiction.

Plaintiff cites *Novak v. Mutual of Omaha Ins. Co.*[31] for the proposition that an insurance company subjects itself to general jurisdiction (that is, jurisdiction over claims unrelated to its contacts with the state) simply by registering with the Department of Insurance. The court respectfully disagrees with plaintiff's interpretation of this case. In *Novak*, the defendants had registered with the Kansas Insurance Department and were subject to service

---

[30] Doc. 11, Exh. 2, O'Dell Aff. at ¶ 5.

[31] 29 Kan. App. 2d 526, 28 P.3d 1033 (2001).

of process – by serving the Kansas Insurance Commissioner – pursuant to Kan. Stat. Ann. § 40-218.[32]   *Novak* is distinguishable from the instant case in two important respects.   First, the court in *Novak* found that the defendants were present in the state of Kansas.   That is, beyond the statutory appointment of the Insurance Commissioner as defendants' agent for service of process, defendants also maintained a divisional office in Wichita.   From that office, defendants recruited, trained, and supported agents in central Kansas.[33]   Moreover, in *Novak*, the defendants conceded that jurisdiction did not violate due process because defendants conducted substantial business in Kansas.[34]

In contrast, the uncontroverted state of the record here is that ICW conducts no business in Kansas.   Therefore, the court concludes that plaintiff has failed to make a prima facie showing that jurisdiction is proper as to ICW.   Plaintiff's claims against ICW are therefore dismissed, without prejudice, for lack of personal jurisdiction.

### III.   Defendants' Alternative Motion for Transfer

In the alternative to outright dismissal, Caicos[35] asks the court to transfer this case to the United States District Court for the Western District of Washington.   Caicos contends that such a transfer is warranted because almost all witnesses, as well as the construction project

---

[32] *Id.* at 529.

[33] *Id.* at 527.

[34] *Id.* at 532 (citing *State Ex Rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165 (Mo. 1999))

[35] Because the court has already determined that plaintiff's claims against ICW should be dismissed for lack of personal jurisdiction, it will only address the venue arguments raised by Caicos.

and the materials at issue, are located in Washington.  In response, plaintiff argues that venue in this case is not, as Caicos argues, governed by the federal venue statute,[36] but by the federal removal statute.[37]   That is, plaintiff argues that, because this case was originally filed in state court, venue is proper under 28 U.S.C. § 1441, the federal removal statute. In reply to plaintiff's memorandum in opposition, Caicos has not addressed the arguments advanced by plaintiff with respect to this issue.   Instead, Caicos merely states that plaintiff has not proven that transfer of venue to Washington would cause plaintiff substantial hardship.   As set forth below, Caicos' argument misses the mark.

*Thermal Components Co. v. Griffith*,[38] which was decided by the Hon. John W. Lungstrum, U.S. District Judge, is squarely on point on this issue.   Without duplicating Judge Lungstrum's detailed analysis here, the court adopts the holding in that case and determines that, pursuant to 28 U.S.C. § 1441, the U.S. District Court for the District of Kansas is the appropriate venue in this removed case.

Even if § 1441 did not control in this situation, the court would still conclude that it should not transfer venue to the Western District of Washington.   The transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

---

[36] 28 U.S.C. § 1391 *et seq.*

[37] 28 U.S.C. § 1441(a).

[38] 98 F. Supp. 2d 1224, 1231 (D. Kan. 2000).

brought."[39]   The party making the motion to transfer a case under the statute bears the burden of establishing that the existing forum is inconvenient. [40]   Transfer is not justified where the transfer merely results in shifting the inconvenience from one party to the other.[41]   The court must make a case-by-case determination of whether transfer is proper in the circumstances.[42] However, "[u]nless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."[43]

Caicos has not satisfied its burden to prove that Kansas is an inconvenient forum. Caicos has presented no specific information whatsoever regarding witnesses and exhibits that are located in Washington.   Conversely, plaintiff has presented the court with a list of nine potential witnesses who reside in Kansas.[44]   At best, transferring this case to the Western District of Washington would merely shift the inconvenience from Caicos to plaintiff.   Caicos' motion to transfer venue is therefore denied.

## IV.   Conclusion

As set forth above, defendants' motion (**doc. 11**) is granted in part and denied in part.

---

[39] 28 U.S.C. § 1404(a).

[40] *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1505 (10th Cir. 1991).

[41] *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992); *Sheldon v. Vermonty*, 31 F. Supp. 2d 1287, 1298 (D. Kan. 1998).

[42] *Chrysler Credit,* 928 F .2d at 1516.

[43] *Scheidt*, 956 F.2d at 965 (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

[44] Doc. 16, Exh. 8, Wickham Aff. at ¶ 10.

Because the court concludes that it can properly exercise personal jurisdiction over plaintiff's claims against Caicos, the motion to dismiss is denied as to Caicos.   However, because the court cannot exercise jurisdiction over ICW, the motion is granted as to ICW.   ICW is therefore dismissed from this lawsuit for lack of personal jurisdiction, without prejudice to the filing of a separate suit (presumably in Washington or California).   Caicos' alternative motion to transfer venue is also denied for the reasons set forth above.

   IT IS SO ORDERED.

   Dated this 29th day of June, 2005, at Kansas City, Kansas.


     s/   James P. O'Hara                                   
James P. O'Hara
U.S. Magistrate Judge